**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CEM BUSINESS SOLUTIONS, INC., <br> *Plaintiff*, <br> v. <br> BHI ENERGY, <br> *Defendant & Third-Party Plaintiff,* <br> v. <br> CEM BUSINESS SOLUTIONS, INC. and GEETHA RAMAKRISHNAN, <br> *Third-Party Defendants*. | Civil Action No. 21-18543 <br><br> **OPINION & ORDER** |

**John Michael Vazquez, U.S.D.J.**

This matter started as a breach of contract case and now, through counterclaims and third-party claims, includes allegations that Plaintiff misrepresented its ability to perform a project. Presently before the Court is Third-Party Defendant Geetha Ramakrishnan's motion to dismiss the Third-Party Complaint. D.E. 39. Defendant/Third-Party Plaintiff BHI Energy ("BHI") filed a brief in opposition, D.E. 46, to which Ramakrishnan replied, D.E. 47. The Court reviewed the parties' submissions in support and in opposition of the motion,[1] and decided the motion without

---

[1] For purposes of this Opinion, the Court refers to Ramakrishnan's brief in support of her motion (D.E. 39-1) as "Br."; BHI's opposition brief (D.E. 46) as "Opp."; and Ramakrishnan's reply (D.E. 47) as "Reply".

oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b).  For the reasons stated below, Ramakrishnan's motion is **GRANTED in part** and **DENIED in part**.

I. FACTUAL BACKGROUND[2]

Plaintiff CEM Business Solutions, Inc. ("CEM") and BHI are parties to a "Licensing Agreement" for software.  FAC ¶ 1.  CEM alleges that it performed under the Licensing Agreement, and corresponding Statements of Work ("SOWs"), but that BHI failed to pay for the licenses and perform work required by the Licensing Agreement.  *Id.* ¶¶ 3, 7, 11, 13-14, 15.

CEM initiated this action in state court, asserting contract-based claims against BHI.  D.E. 1.  BHI removed the matter based on diversity jurisdiction, 28 U.S.C. § 1332.  D.E. 1.  On April 6, 2022, Judge Hammer entered a consent order providing CEM with leave to file an amended complaint.  D.E. 24.  CEM filed the First Amended Complaint ("FAC") on April 8, 2022, D.E. 25, and Defendant filed its Answer, Affirmative Defenses, and Amended Counterclaims/Third-Party Claims (the "Counterclaim/Third-Party Claims" or "TP Compl."), D.E. 27.  In its Counterclaims/Third-Party Claims, BHI asserts contract and fraud-based claims against CEM and Third-Party Defendant Ramakrishnan.  *Id.*

CEM designs and implements software solutions for engineering, procurement, and construction businesses.  TP Compl. ¶ 22.  Ramakrishnan is CEM's co-founder, Chief Operating Officer, and project manager.  *Id.* ¶ 2.  BHI alleges that based on CEM and Ramakrishnan's representations about CEM's expertise, abilities and resources, BHI entered into a Master Services

---

[2] The facts are derived from Plaintiff's First Amended Complaint, D.E. 25, and Defendant's Answer, Affirmative Defenses, and Amended Counterclaims/Third-Party Claims, D.E. 27. When reviewing a motion to dismiss, a court accepts as true all well-pleaded facts in a pleading. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  In addition, Federal Rule of Civil Procedure 10(c) provides that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the proceeding for all purposes." Fed. R. Civ. P. 10(c).  Here, BHI included the relevant contracts as exhibits to its Counterclaims/Third-Party Claims.  *See* D.E. 28.  Consequently, the Court also considered these documents in deciding the instant motion.

Agreement ("MSA") with CEM. *Id.* ¶ 30. The MSA incorporates by reference three SOWs that correspond to three phases of the project (the "Project") addressed in the MSA. *Id.* ¶ 30-31. The Project involved overhauling and updating BHI's payroll, human resources, finance, accounting, billing, and invoicing systems. *Id.* ¶ 19. BHI is a billion-dollar company with more than 4,000 employees and contractors that provides various services in the energy industry. *Id.* ¶¶ 17-18.

As CEM worked on the Project, BHI alleges that "it became clear that CEM and [Ramakrishnan] had knowingly oversold and misstated CEM's expertise, capability, and resources in order to entice BHI to hire CEM." *Id.* ¶ 49. As a result, BHI ordered that CEM cease working on Phases 2 and 3, to focus on implementing Phase 1. *Id.* ¶ 59. But in May or June 2021, Ramakrishnan informed BHI that CEM would not be able to meet an already extended Phase 1 "go-live" date. *Id.* ¶¶ 57, 63. Around this time, BHI stopped payments to CEM and informed CEM of what it would need to do to cure its purported breaches. *Id.* ¶¶ 64-65. CEM did not take any steps to cure and stopped work on August 14, 2021. *Id.* ¶¶ 66-67. BHI alleges that it paid CEM more than $1 million in implementation costs, but CEM did not even complete Phase 1. *Id.* ¶ 69. Moreover, although BHI paid some licensing costs, the licenses were never used due to CEM's deficiencies. BHI alleges that it should not have even incurred any licensing costs under the contracts because of CEM's deficient work product. *Id.* ¶ 70.

In the Counterclaims/Third-Party Claims, BHI asserts fraud, negligent misrepresentation, and New Jersey Consumer Fraud Act ("NJCFA") claims against CEM and Ramakrishnan (Counts I, II, and VII, respectively). BHI also asserts contract-based claims and a claim for unjust enrichment against CEM (Counts III through VI). On July 19, 2022, Ramakrishnan filed the instant motion, seeking to dismiss the third-party claims asserted against her under Federal Rule of Civil Procedure 12(b)(6). D.E. 39. BHI opposes the motion. D.E. 46.

## II. LEGAL STANDARD

Ramakrishnan moves to dismiss the third-party claims for failure to state a claim upon which relief can be granted. A motion to dismiss third-party claims is analyzed under the same standards as an ordinary Rule 12(b)(6) motion to dismiss. *Gap Props., LLC v. Cairo*, No. 19-20117, 2021 WL 5757410, at *2 (D.N.J. Dec. 3, 2021). For a claim to survive dismissal under Rule 12(b)(6), it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016). In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009). Restatements of the elements of a claim are legal conclusions, and therefore, are not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The Court, however, "must accept all of the complaint's well-pleaded facts as true" and give a plaintiff the benefit of all reasonable inferences flowing therefrom. *Fowler*, 578 F.3d at 210.

"Independent of the standard applicable to Rule 12(b)(6) motions, Rule 9(b) imposes a heightened pleading requirement of factual particularity with respect to allegations of fraud." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). Pursuant to Rule 9(b), when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake . . . [m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). A party alleging fraud must therefore

4

support its allegations with factual details such as "the who, what, when, where and how of the events at issue." *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries*, LLC, 812 F.3d 294, 307 (3d Cir. 2016); *see also Feingold v. Graff*, 516 F. App'x 223, 226 (3d Cir. 2013) (explaining that "[t]o satisfy the particularity standard, 'the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation.'" (quoting *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007))). This heightened standard is designed to "ensure that defendants are placed on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of fraud." *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989) (internal quotation marks omitted).

### III. ANALYSIS

#### A. Fraud (Count I)

In Count I of the Counterclaims/Third-Party Claims, BHI asserts a fraud claim against CEM and Ramakrishnan. BHI alleges that CEM and Ramakrishnan made false representations that were material to BHI's decision to hire CEM. BHI contends that because of these representations, it entered into the MSA and SOWs with CEM and continued to work with CEM once CEM started the Project. TP Compl. ¶¶ 79, 82. Ramakrishnan first argues that the fraud claim must be dismissed as to her because BHI fails to allege that she made any actionable misrepresentations. Ramakrishnan contends that BHI only alleges predictions, which are insufficient as a matter of law. Br. at 6-7.

To prevail on a claim for common law fraud, a plaintiff must prove each of the following: (1) a material misrepresentation of fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon; and (5) resulting

damages. *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367 (N.J. 1997). With respect to the first element, a plaintiff must plead a "material misrepresentation of a presently existing or past fact." *CDK Glob., LLC v. Tulley Auto. Grp., Inc.*, 489 F. Supp. 3d 282, 305 (D.N.J. 2020). Thus, to be actionable, "a statement's content must be susceptible of 'exact knowledge' at the time it is made.'" *Alexander v. CIGNA Corp.*, 991 F. Supp. 427, 435 (D.N.J. 1998). But "[s]tatements about 'future or contingent events, to expectations or probabilities, or as what will or will not be done in the future,' and "statements categorized as 'puffery' or 'vague and ill-defined opinions'" are not usually considered misrepresentations. *CDK Glob., LLC*, 489 F. Supp. 3d at 305 (quoting *Alexander*, 991 F. Supp. at 435). "However, 'where a promise is given and the promisor knows at the time of promising that he has no intention of fulfilling it, the promise will constitute a misstatement of present fact and may support an allegation of fraud.'" *Luscko v. S. Container Corp.*, 408 F. App'x 631, 634 (3d Cir. 2010) (quoting *Lo Bosco v. Kure Eng'g*, 891 F. Supp. 1020, 1031 (D.N.J. 1995)).

BHI alleges that it had numerous conversations with Ramakrishnan where she made representations about CEM's capability, expertise, and resources to fulfill BHI's Project requirements. Many of these representations are allegedly incorporated into the SOWs. TP Compl. ¶¶ 24-26, 50. BHI further alleges that Ramakrishnan made representations about the cost and timing of the Project, and that these projections are also incorporated into SOWs. *Id.* ¶¶ 30, 34. BHI contends that these representations support its fraud claim. *See* Opp. at 8 (citing TP Compl. ¶¶ 50a-50v).

The Court agrees that BHI sufficiently pleads actionable misrepresentations. For example, BHI alleges that Ramakrishnan represented that CEM custom-built a "manager self-service" component that other customers successfully used, but when BHI tested the component, it was

unusable. *Id.* ¶ 50(e). This alleged statement pertains to a past fact; it is not a prediction, statement of future events or puffery. BHI also pleads that CEM and Ramakrishnan promised to meet certain requirements in implementing the Project, but CEM failed to meet these expectations. *See, e.g., id.* ¶ 50(d) (representing that CEM's systems "would be configured in accordance with multi-tiered tax rates). These statements and other similar statements regarding the timing and cost of a project, and CEM's experience and abilities (*see, e.g., id.* ¶ 50(j) and (q)) are affirmative statements that are sufficient to plead the first element of a fraud claim.[3] *See City Assocs. LLC v. Carter & Burgess Consultants, Inc.*, No. 05-3227, 2007 WL 2892680, at *3 (D.N.J. Sept. 28, 2007) (explaining that, among others, statements that the plaintiff "had the ability to manage and fund a project of this size and scope when [the plaintiff] lacked this ability . . . could qualify . . . as material misrepresentations of present or past fact"); *see also Chaleplis v. Karloutsos*, --- F. Supp. 3d ---, 2022 WL 2304418, at *3 (E.D. Pa. 2022) (concluding that under Pennsylvania law statements about business connections and a history of successful investments could amount to fraudulent representations).[4]

Next, Ramakrishnan argues that BHI does not include necessary details, such as the date and time of the alleged misrepresentations or to whom or how the alleged misstatements were made. Br. at 7. Again, Rule 9(b) requires that BHI plead its fraud claims with heightened

---

[3] While not raised by Ramakrishnan, the Court notes that BHI does not plead that Ramakrishnan had no intention of fulfilling these promises when made. *See, e.g., Luscko*, 408 F. App'x at 635 ("Luscko only points to the problems encountered during the transition period and his unsubstantiated theory regarding Southern's ultimate intent without identifying any facts showing Hill knew of the subsequent problems that Southern would endure[.]"). Because Ramakrishnan does not raise this issue, the Court declines to do so *sua sponte*.

[4] The Court also notes that many statements that BHI relies upon to support its fraud claim are not actionable because they are not statements by CEM or Ramakrishnan. *See, e.g., id.* ¶ 50(h) (pleading that BHI explained certain information to CEM); ¶ 50(p) (pleading the CEM relied on outdated versions when designing certain components of the Project).

7

specificity. Fed. R. Civ. P. 9(b). But this standard still allows for flexibility. BHI need not plead "every material detail of the fraud such as date, location, and time" but must use "alternative means of injecting precision and some measure of substantiation into [its] allegations of fraud." *In re Rockefeller Ctr.*, 311 F.3d at 216. Here, BHI provides sufficient detail to substantiate its fraud claim. BHI pleads that in March 2020, it sent CEM a document listing its requirements for the Project. TP Compl. ¶ 25. BHI alleges that CEM and Ramakrishnan represented that CEM could fulfill the requirements and on April 9, 2020, CEM provided a proposal for the Project. *Id.* ¶¶ 26, 28. BHI pleads that the SOWs incorporate CEM's representations in the Proposal, *id.* ¶¶ 34, 39, and provides a list of some of CEM and Ramakrishnan's alleged misrepresentations, *id.* ¶ 50. Accordingly, Ramakrishnan has adequate notice of the misconduct alleged against her.

Ramakrishnan also argues that BHI's fraud claim must be dismissed due to the economic loss doctrine. Br. at 8-11. "The economic loss doctrine prohibits plaintiffs from recovering in tort economic losses to which their entitlement only flows from contract." *Chen v. HD Dimension Corp.*, No. 10-863, 2010 WL 4721514, at *8 (D.N.J. Nov. 15, 2010). Thus, "whether a tort claim can be asserted alongside a breach of contract claim depends on whether the tortious conduct is extrinsic to the contract between the parties." *Id*. Consequently, a party may bring claims based on fraud in the inducement, without running afoul of the economic loss doctrine, if the "underlying allegations involve misrepresentations unrelated to the performance of the contract." *Id.* For example, an actionable fraud in the inducement claim may be based on statements that "precede the actual commencement of the agreement." *Id.*; *cf. RNC Sys., Inc. v. Mod. Tech. Grp., Inc.*, 861 F. Supp. 2d 436, 452 (D.N.J. 2012) (finding the alleged misrepresentations to directly relate to plaintiff's performance under the contract such that the fraud claim was barred by the economic loss doctrine). In other words, "a well-settled exception to the economic loss doctrine is fraud in

8

the inducement of a contract." *Fischell v. Cordis Corp.*, No. 16-928, 2016 WL 5402207, at *8 (D.N.J. Sept. 26, 2016).

For example, in *G&F Graphic Services. v. Graphic Innovators, Inc.*, 18 F. Supp. 3d 583 (D.N.J. 2014) the court found that the economic loss doctrine did not bar the plaintiff's claim for fraud in the inducement where the plaintiff alleged facts to "support an inference that [plaintiff] would not have contracted to purchase [a product] given its knowledge of the historical problems with that [product], [] thereby supporting a conclusion that [the defendant's] alleged misrepresentation induced [the plaintiff] to enter into the contract with [defendant]." *Id.* (finding that "such representations are necessarily 'extraneous to the contract,' because they took place prior to the execution of the contract") (quoting *Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.*, 226 F. Supp. 2d 557, 564 (D.N.J. 2002)); *see also Wilhelm Reuss GmbH & Co KG, Lebensmittel Werk v. E. Coast Warehouse & Distrib. Corp.*, No. 16-4370, 2018 WL 3122332, at *5 (D.N.J. June 26, 2018) (concluding that statements regarding scope of insurance coverage made before the decision to continue business were not barred by the economic loss doctrine).

In contrast, in *RNC Systems, Inc.*, the court concluded that two alleged misrepresentations were directly related to RNC's performance under the contract and formed the basis of the breach of contract claim. The contract at issue explicitly addressed the development of a project that RNC allegedly made misrepresentations about prior to the contract execution and the contract addressed the parties' remedies if the project was nonconforming. *RNC Sys., Inc.*, 861 F. Supp. 2d at 451-52; *see also Bergen Beverage Distribs. LLC v. E. Distribs., Inc.*, No. 17-4735, 2022 WL 833373, at *9 (D.N.J. Mar. 21, 2022) (concluding that fraud claim premised on pre-contract misrepresentations that "were squarely address in the Agreement" was precluded by the economic loss doctrine).

9

At the same time, there is conflicting case law when interpreting the economic loss doctrine and fraud claims. *See Montclair State Univ. v. Oracle USA, Inc.*, No. 11-2867, 2012 WL 3647427, at *5 (D.N.J. Aug. 23, 2012) (explaining that "the Third Circuit has repeatedly described New Jersey's economic loss doctrine, as it relates to fraud claims, as a 'morass'") (citing *Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 144 (3d Cir. 2001)). The parties, however, appear to agree that at a minimum, a fraudulent inducement claim can proceed if it is premised on a pre-contractual representation that is separate from the contract terms. Here, at least some of Ramakrishnan's alleged misrepresentations do not appear to be incorporated into the MSA or SOWs. For example, BHI alleges that CEM and Ramakrishnan represented that CEM was an approved e-verify company. TP Compl. ¶ 50(j). BHI also alleges that Ramakrishnan made misrepresentations about the expertise of her CEM team. *Id.* ¶ 50(q). BHI further pleads that these statements induced BHI to enter into the contract with CEM, and they are not addressed in the MSA or SOWs. *Id.* ¶ 30; *see also* D.E. 28. Accordingly, because BHI pleads alleged misstatements that were made prior to contract execution and are not incorporated into the relevant contracts, the statements are not barred by the economic loss doctrine. Ramakrishnan's motion is denied on these grounds.

Finally, Ramakrishnan claims that Count One must be dismissed because the MSA contain an integration clause. Namely, Ramakrishnan maintains that because of the integration clauses, BHI cannot use agreements or statement outside of the relevant contracts to claim it was fraudulently induced to enter into those contracts. Br. at 12-14. Generally, the parol evidence rule bars a party from introducing evidence extrinsic as to a fully integrated contract. But there is an exception to the parol evidence rule for evidence of fraud in the inducement. *See Acrocore Exterior Mouldings, LLC v. Dryvit Sys., Inc.*, No. 19-22238, 2020 WL 6797072, at *5 (D.N.J. Nov. 19, 2020). Under the exception, a party can use extrinsic evidence if

> the alleged fraud . . . concern[s] a matter not addressed in the agreement; in other words, the subject of the misrepresentation must be extraneous to the agreement. Where, by contrast, misrepresentations made during the course of negotiations are addressed by the terms of the contract, the claim becomes one for breach of contract, not fraudulent inducement. In such a case, the integration clause will bar the claim.

*Id.* (internal quotations omitted); *see also Filmlife, Inc. v. Mal "Z" Ena, Inc.*, 598 A.2d 1234, 1236 (N.J. 1991) (noting that New Jersey courts distinguish between "fraud regarding matters expressly addressed in the integrated writing and fraud regarding matters wholly extraneous to the writing"). As discussed, BHI alleges that Ramakrishnan made misrepresentations about matters that were not included in the MSA or SOWs. Consequently, the integration clause does not mandate dismissal of BHI's fraud claim.[5]

For the foregoing reasons, Ramakrishnan's motion as to Count I is denied.

### B. Negligent Misrepresentation (Count II)

Ramakrishnan also seeks to dismiss Count II, BHI's negligent misrepresentation claim. "The elements of negligent misrepresentation are essentially the same as those of common law fraud except negligent misrepresentation does not require scienter." *N.Y. Pipeline Mech. Contractors, LLC v. Sabema Plumbing & Heating Co.,* No. 10-148, 2012 WL 209349, at *4 (D.N.J. Jan. 24, 2012) (citation omitted). To establish a claim of negligent misrepresentation, a plaintiff must prove that "'(1) the defendant negligently provided false information; (2) the plaintiff was a reasonably foreseeable recipient of that information; (3) the plaintiff justifiably relied on the information; and (4) the false statements were a proximate cause of the plaintiff's damages.'" *Id.* (quoting *McCall v. Metro. Life. Ins. Co.,* 956 F. Supp. 1172, 1186 (D.N.J. 1996)).

---

[5] BHI also argues that the integration clause is not specific enough to bar extrinsic evidence and does not apply to Ramakrishnan because she is not a party to any of the agreements at issue. Opp. at 25-29. The Court, however, does not reach these arguments because it disagrees with Ramakrishnan's argument on other grounds.

11

Further, "any tort of negligence 'requires the plaintiff to prove that the putative tortfeasor breached a duty of care owed plaintiff.'" *Id.* (quoting *Highland Ins. Co. v. Hobbs Grp.*, 373 F.3d 347, 351 (3d Cir. 2004)). And "under New Jersey law[,] a party cannot maintain a negligence action, in addition to a contract action, unless the plaintiff can establish an independent duty of care." *Saltiel v. GSI Consultants, Inc.*, 788 A.2d 268, 278 (N.J. 2002) (citing *Int'l Mins. & Mining Corp. v. Citicorp N. Am., Inc.*, 736 F. Supp. 587 (D.N.J.1990) and *Stewart Title Guar. Co. v. Greenlands Realty, L.L.C.*, 58 F. Supp. 2d 370, 373 (D.N.J. 1999)).

First, Ramakrishnan maintains that the claim must be dismissed because she did not owe an independent duty to BHI. Br. at 14-16. BHI responds that its negligent misrepresentation claim is based on Ramakrishnan's omissions, or failure to reveal the truth. Opp. at 15-16. BHI relies on *Highlands Insurance Co. v. Hobbs Group, LLC*, 373 F.3d 347 (3d Cir. 2004). *Id. Highlands*, however, involved parties in the insurance industry and the court imposed a duty of care based on this specialized relationship. *See Highlands Ins. Co.*, 373 F.3d at 351-55. Neither party contends that there is a special relationship between BHI and Ramakrishnan. *Highlands*, therefore, is inapposite.

However, a negligent misrepresentation claim based on a defendant's "silence or suppression of truth" may proceed absent a special relationship. *See id.* at 355 (recognizing that a "duty of disclosure may also arise in any situation called for by good faith and common decency"). But whether a duty arises requires a court to "first consider the foreseeability of harm to a potential plaintiff, and then analyze whether accepted fairness and policy considerations support the imposition of a duty." *Jerkins ex rel. Jerkins v. Anderson*, 922 A.2d 1279, 1284 (N.J. 2007) (internal citations omitted). Here, despite BHI's arguments that courts have concluded that a duty

12

to disclose arises between arms-length parties negotiating a contract, BHI fails to establish that a duty exists here.

BHI solely relies on *Prudential Insurance Company of America v. Goldman Sachs & Co.*, No. 12-6590, 2013 WL 1431680 (D.N.J. Apr. 9, 2013) to demonstrate that a duty can arise between arms-length parties negotiating a contract. But in *Prudential*, the court imposed a duty because the plaintiffs specifically alleged that the defendants "made representations and assurances for [the plaintiffs'] benefit and guidance knowing that the [p]laintiffs would rely on the information." *Prudential Ins. Co. of Am.*, 2013 WL 1431680, at *9. In fact, the court distinguished the alleged facts from those in *Commerce Bancorp, Inc. v. BK International Insurance Brokers, Ltd.*, 490 F. Supp. 2d 556 (D.N.J. 2007). *Id.* at *9. In *Commerce*, the court did not impose a duty where the parties were negotiating a contract arms-length, and the plaintiff alleged that the defendant "made the [false] assurances to further its own interests, to the detriment of Commerce." 490 F. Supp. 2d at 564.

BHI's allegations are like those in *Commerce*. Unlike *Prudential*, there are no allegations suggesting that Ramakrishnan made any false statements for BHI's benefit or guidance. Accordingly, BHI fails to plead sufficient facts suggesting that Ramakrishnan owed BHI a duty of care. BHI's negligent misrepresentation claim is not plausibly pled as to Ramakrishnan.

### C. Consumer Fraud Act (Count VII)

Finally, Ramakrishnan maintains that the Consumer Fraud Act claim must be dismissed as to her because the Agreement does not involve the sale of merchandise. Br. at 17-23. The NJCFA is a remedial act that is liberally construed. *All the Way Towing, LLC v. Bucks Cnty. Int'l, Inc.*, 200 A.3d 398, 405 (N.J. 2019). The Act prohibits "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment,

13

suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale or advertisement of *any merchandise or real estate.*" N.J. Stat. Ann. § 56:8-2 (emphasis added). Merchandise is defined to include "any objects, wares, goods, commodities, services or anything offered, directly or indirectly to the public for sale." N.J. Stat. Ann. § 56:8-1(c).

"[N]either the commercial setting of a transaction nor a customization of an item removes a transaction from the CFA's reach." *All the Way Towing, LLC*, 200 A.3d at 407. Thus, "[i]n business-to-business transactions it is the 'nature of the transaction' that will determine whether it can fit within the CFA's definition of merchandise." *Id.* To "promote consistency" when considering business-to-business transactions, the New Jersey Supreme Court provided the following factors to determine whether a transaction involves merchandise:

> (1) the complexity of the transaction, taking into account any negotiation, bidding, or request for proposals process; (2) the identity and sophistication of the parties, which includes whether the parties received legal or expert assistance in the development or execution of the transaction; (3) the nature of the relationship between the parties and whether there was any relevant underlying understanding or prior transactions between the parties; and, as previously noted; (4) the public availability of the subject merchandise.

*Id.* This is a fact sensitive analysis that is more appropriate for resolution through a motion for summary judgment, not a Rule 12(b)(6) motion to dismiss. In fact, each of the cases Ramakrishnan relies upon to support her argument arose after the parties engaged in discovery. *See All the Way Towing, LLC*, 200 A.3d at 400-01 (reviewing lower courts' decision at summary judgment addressing whether item was merchandise under the NJCFA); *Princeton Healthcare Sys. v. Netsmart N.Y., Inc.*, 29 A.3d 361 (N.J. Super. Ct. App. Div. 2011) (partially reversing order granting partial summary judgment and denying motion to dismiss); *Maruka USA, Inc. v. Specialty*

*Lighting Indust., Inc.*, No. A-2220-17T4, 2019 WL 5690501, at *5-7 (N.J. Super. Ct. App. Div. Nov. 4, 2019) (reviewing trial court's decision dismissing NJCFA claim through a motion for summary judgment).  Consequently, the Court will not dismiss BHI's NJCFA claim on these grounds at this time.

BHI also seeks to dismiss the NJCFA claim because of the integration clause in the MSA.  Br. at 24-26.  As discussed, at least some of Ramakrishnan's misrepresentations, which also partially form the basis of BHI's NJCFA claim fall outside of the integration clause.  Therefore, the Court will not dismiss Count VII on this ground either.

## IV. CONCLUSION

For the reasons stated above, and for good cause shown,

**IT IS** on this 23rd day of December, 2022,

**ORDERED** that Third-Party Defendant's motion to dismiss, D.E. 39, is **GRANTED in part** and **DENIED in part**; and it is further

**ORDERED** that Third-Party Defendant's motion is **GRANTED** as to Count II of the Counterclaims/Third-Party Complaint.  Accordingly, Count II is **DISMISSED** as to Ramakrishnan without prejudice; and it is further

**ORDERED** that Third-Party Plaintiff shall have thirty (30) days to file an amended complaint that cures the deficiencies noted herein.  If an amended pleading is not filed within that time, Count II of the Counterclaims/Third-Party Claims will be dismissed as to Ramakrishnan with prejudice; and it is further

**ORDERED** that Ramakrishnan's motion is otherwise **DENIED**.

_____
John Michael Vazquez, U.S.D.J.

15